IN THE SUPERIOR COURT OF PENNSYLVANIA
MIDDLE DISTRICT

C.A. No. 16-3066

THE ESTATE OF JUAN BONNILLA, JR. ET AL,

Appellee,

v.

THE CITY OF YORK, ET AL,

Appellant.

**BRIEF FOR APPELLANT**

Appeal from order, decision and judgment in the United States District Court of the Middle District of Pennsylvania, at Civil Action No. 14-CV-2238, dated June 7, 2016.

Farley G Holt, Esquire
Supreme Court Id No. 59920
Law Office of Farley G Holt
34 North Queen Street
York, Pa 17403
Phone: (717) 846-0550

Attorney for Appellant

# TABLE OF CONTENTS

Table of Authorities     iii

Statement of Jurisdiction     1

Order in Question     2

Statement of Both the Scope and Standard of Review     3

Statement of the Issues for Review     4

Statement of Related Cases     4

Statement of the Case     5

     Procedural History     5

     Factual History     6

Summary of Argument     10

Argument for Appellant     11

I.     WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT.     11

II.     WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.     14

     A. The Court Erred in Granting Summary Judgment in Defendants favor for Plaintiff's Excessive Force Claims.     15

     B. The Trial Court Erred in Granting Summary Judgment based on Qualified Immunity.     18

C.  The Trial Court Erred in Granting Defendant City of York's Motion for Summary Judgment for <u>Monell</u> claims.                    19

D.  The Trial Court Erred in Granting Summary Judgment for the Assault and Battery, Wrongful Death and Survival Actions, and Punitive Damages Claims.                    21


Conclusion                    22

Certificate of Compliance

Proof of Service

# TABLE OF CITATIONS

I.   Published Opinions from Supreme Court of the Unites States

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)   14

Foman v. Davis, 371 U.S. 178, 182 (1962)   12

Graham v. Conner, 490 U.S. 386 (1989)   15

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94, 98 S.Ct. 2018 (1978)   19

Pearson v. Cullahan, 555 U.S. 223, 129 S.Ct. 808 (2009)   18

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)   18

II. Published Opinions from the Third Circuit Court of Appeals

Azur v. Chase Bank, 601 F.3d 212, 216 (3d Cir. 2010)   3

Bjorgung v. Whitetail Resort. LP, 550 F.3d 263, 266 (3d Cir. 2008)   3

Cureton v. Nat'l Collegiate Athletic Ass'n v. , 252 F.3d 267 (3rd Cir. 1992)   12, 13

Estate of Smith v. Marasco, 318 F.3d 497, 51 (3d. Cir. 2003)   15

Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3rd Cir. 2005).   14

Kopec v, Tate, 361 F.3d 771, 777 (3d Cir. 2004)   15

Parks v. Rumsfeld, 119 Fed. Appx. 382 (3d Cir. 2005)   3

Savares v. Agriss, 883 F.2d 1194. (3d Cir. 1989)   22

III.  Other Decisions

Briston v. Cnty. Of Alleghany, 2011 U.S. Dist. LEXIS 13663 (2011)          20

Fatir v. Dowdy, Civ. No. 95-CV-0677, 2002 WL 2018824, *8 (D. Sel. Sept. 4, 2002)          13

Reyes v. Pac. Bell, 21 F.3d 1115, 1115 n.4 (9th Cir. 1994)          13


IV.    Statutes and Rules

Fed. R. Civ. P. 15(a)          3, 11

Fed. R. Civ. P. 56(a)          14

42 U.S.C. § 1983          5

## **STATEMENT OF JURISDICTION**

Jurisdiction over this matter is conferred upon this Honorable Court by 28 USC § 1291, which provides that courts of appeals shall have jurisdiction over appeals from all final decisions of the district courts of the United States. The District Court issued an order on June 7, 2016, which, in part, granted summary judgment and closed the case, therefore making the order a final decision.

## ORDERS OR DETERMINATIONS IN QUESTION

Appellant challenges the District Court's Order dated June 7, 2016, which states, in relevant part:

## ORDER

In accordance with the accompanying memorandum of law, IT IS HEREBY ORDERED, as follows:

(1) Defendant's motions for summary judgment (Docs. 45 & 47) are

GRANTED;

…

(5) Plaintiff's motion for leave to file an amended complaint (Doc. 87) is

DENIED;

…

SYLVIA H. RAMBO

United States District Judge

Dated: June 7 2016

## STATEMENT OF BOTH THE SCOPE AND STANDARD OF REVIEW

Appellate courts review a trial court's decision refusing leave to amend a complaint under Fed. R. Civ. P. 15(a) for abuse of discretion. Bjorgung v. Whitetail Resort. LP, 550 F.3d 263, 266 (3d Cir. 2008). An appellate court reviews a summary judgment ruling on a de novo basis, applying the same standard as trial courts. Azur v. Chase Bank, 601 F.3d 212, 216 (3d Cir. 2010). "Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id*.   In making this determination, the Court must view all of the facts in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of the nonmoving party. Parks v. Rumsfeld, 119 Fed. Appx. 382 (3d Cir. Pa. 2005).

<u>STATEMENT OF THE ISSUES FOR REVIEW</u>

I.     WHETHER THE TRIAL COURT ABUSED IT'S DISCRETION IN
       DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND
       COMPLAINT.

       **Suggest Answer in the Affirmative.**

       Pursuant to L.A.R. 28.0 (a)(1), the place in the proceeding where the
       issue was raised and ruled upon is the Motion for Leave to Amend
       (J.A. R, Doc. 87) and Order (J.A. W, Doc. 104).

II.    WHETHER THE TRIAL COURT ERRED IN GRANTING
       DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

       **Suggested Answer in the Affirmative.**

       Pursuant to L.A.R. 28.0 (a)(1), the place in the proceeding where the
       issue was raised, objected to, and ruled upon is the Motions for
       Summary Judgment (J.A. G and I, Doc. 45 and 47), Brief in
       Opposition (J.A. l and M, Docs. 53 and 58) and Order (J.A. W, Doc.
       104).

**<u>STATEMENT OF RELATED CASES</u>**


       Appellant is not aware of any related cases of proceedings that may in any

way be related, and is not aware of any previous of pending appeals before this

court arising out of this case or proceedings.

# STATEMENT OF THE CASE

## PROCEDURAL HISTORY

Plaintiff filed a complaint in on November 21, 2014, alleging constitutional claims pursuant to 42 U.S.C. § 1983, against six Defendants, including Officer Christopher Roosen, Officer Michael Jordan, and their respective police departments and municipalities.  (J.A. A, Doc. 1.) In the complaint, Plaintiff alleged that the named officers used excessive force in fatally shooting Juan Bonilla, Jr., during a police encounter, constituting unlawful seizure in violation of the Fourth Amendment. (*Id*. at ¶¶ 41-43, 49-51.) Plaintiff further alleged the fatal shooting constituted assault, battery, and wrongful death under Pennsylvania state law. (*Id*. at ¶¶52-56.) Claims were raised against the police departments and municipalities based on failure to train. Motions to dismiss for failure to state a claim were filed by all defendants. (Docs. 17 and 18.) In ruling on these motions, the trial court dismissed the claims against the police departments. (Doc. 32.)

Parties then proceeded with extensive discovery. On March 21 and 22, 2016, the Officers and their respective police departments filed motions for summary judgment, briefs in support, and a joint statement of facts. (J.A. F, G, H, Docs. 44-48.) Plaintiff filed oppositions to the motions for summary judgment on April 11, 2016, and her own statement of facts. (J.A. K and L, Doc. 52-53, 58.) Plaintiff did concur with West Manchester Township's motion, and West Manchester

5

Township was removed from the case. (Doc. 58.) Defendant's then filed joint

motions in limine to exclude witness statements filed after the   discovery deadline

and expert testimony and reports submitted by Plaintiff in opposition to the

motions for summary judgment, as well as to strike Plaintiff's statement of facts.

(Doc. 54, 56, 60.) On May 6, 2016, Plaintiff filed a motion for leave to amend

complaint (J.A. R, Doc. 87), which Defendant opposed (J.A. U, Doc. 102). By

order on June 7, 2016, the trial court granted summary judgment and denied

Plaintiff's request for leave to amend complaint. (J.A. W, Doc. 104.) The trial

court also denied Defendants' motions to exclude expert reports and witness

statements submitted after the discovery deadline, granted and denied in part the

motion to exclude expert reports and testimony, and determined the motion to

strike Plaintiff's statement of facts to be moot. (*Id*.) Plaintiff timely filed a Notice

of Appeal on July 6, 2016. (Doc. 105.)


## FACTUAL HISTORY

This case arises from an incident on November 24, 2014, at a private

nightclub, known as "Ada's," in York, Pennsylvania. Plaintiff does not dispute that

the altercation arose after Juan Bonilla, Jr., discharged his firearm in the club.

Officer Roosen and Officer Jordan received police dispatch calls of a man with a

weapon and shots fired at Ada's, and both arrived on scene, parking outside the

establishment, facing north in the parking lot. (J.A. F, Doc. 44, at ¶¶ 21-22, 27, 32-33).  The Officers claim that they observed Bonilla leave the bar and fired additional shots, and they then fired shots at Bonilla. (*Id*. at ¶¶ 45-47, 50-51). Officer Roosen further claims that he moved away from Officer Jordan in a northwest arc in order to position himself behind Bonilla, and at that point he saw Bonilla fire at a grey minivan that was attempting to drive out of the parking lot in front of a Royer's Flower Shop. (*Id*. at ¶¶ 52-56). Plaintiff represents that Bonilla did not discharge his firearm in the Royer's parking lot, based on tracing the evidence through the police investigation records and reviewing the location of shell casings in relation to the deposition testimony regarding the locations of persons involved. (J.A. F, Doc. 52, at p. 3).  Further, the driver of the minivan, Samantha Sheeler, has stated she noticed a man running along the passenger side of the minivan while she was driving to the exit in the back of Royer's parking lot and that she saw officers firing their weapons. (J.A. F, Doc. 44, at ¶¶ 57-59, 62). Sheeler further indicated that she believed it was the police firing at her car. (J.A. L, Doc. 52, at p. 5 and Exhibit 17).

Officer Roosen admits that at this time he fired at Bonilla's center mass. (J.A. F, Doc. 44, at ¶¶ 69-70). When Bonilla was struck, Officer Roosen witnessed him put his arms out to his side and toss an object from his hand. (*Id*. at ¶¶ 71-72). At this time, Officer Roosen claims to have ceased firing, because he no longer

perceived Bonilla to be a threat. (*Id*. at ¶ 73). However, Officer Jordan claims that he lost sight of Bonilla due to a minivan being in his way, and therefore did not see an object leave Bonilla's hand. (*Id*. at ¶¶ 76-78). The evidence regarding the existence of such a van varies. Officer Roosen has testified to not seeing a silver van during the entire encounter. (J.A. K, Doc. 52, Exhibit 12, at p.57). Sheeler, the driver of a minivan alleged to have obstructed the view, denies seeing an officer along the side of her minivan and states that while in the Royer's parking lot, she did not see a man get shot or stumble into a grassy median. (*Id*. at p. 7-8, and Exhibit at p. 17). She further indicated that the events happened after she left the parking lot, because they would have noticed if they were still driving through the lot. (*Id.*)

Bonilla stumbled across the parking lot toward a grassy median, where he fell face down, approximately fifteen feet from Officer Jordan, and Officer Jordan again asked him to show his hands. (J.A. F, Doc. 44, at ¶¶ 79-81). Bonilla rose slightly off of the ground, and allegedly stated "yo, yo, really" and fell back to the ground. (*Id*. at ¶¶ 79-81). After being instructed to show his hands, Bonilla began to raise off the ground again, at which time Officer Jordan fired another shot at Bonilla's center mass. (*Id*. at ¶¶ 83-84).

The Pennsylvania State Police then conducted an investigation. (*Id*. ¶ 89). An autopsy was conducted that concluded the cause of death was a gunshot wound

to the chest, having entered Bonilla's back and the left infrascapular region and exited his chest. (*Id*. at ¶¶ 97-98). A bullet was recovered from Bonilla's left shoulder during the autopsy, (J.A. K, Doc. 52 at p. 14 and Exhibit 1) and a ballistics report determined that the bullet was not fired from Officer Jordan's gun. (J.A. F, Doc. 44, at ¶¶ 99, 112). The investigation determined that Bonilla received the gunshot wound to his leg while still armed, which Plaintiff acknowledged in her Complaint. (J.A. A, Doc. 1).  Additionally, the State Police investigation concluded that the use of force was reasonable. (J.A. F, Doc. 44, at ¶¶ 116-119). However, during depositions, Lazarah Shay Matthews, a witness present during the altercation, testified that she heard police give verbal command for Bonilla to put his gun down, and then immediately observed Bonilla turn towards the officers, drop his weapon, and begin to walk toward the police officers. (J.A. K, Doc. 52, Exhibit 13 at pp. 62-63, 66, 68). Sheeler further stated that it appeared Bonilla "was unarmed and surrendering when he was shot" (*id*. at p. 67, 143-44) and Bonilla kept his hands up until he reached the grassy median (*id*. at p. 96). Matthews also stated that she never heard anyone say anything to Bonilla once he was lying on the ground. (*Id*. at p. 98).  Officer Jordan testified at his deposition that he aimed at Bonilla's center mass, Bonilla fell back to the ground, and he no longer perceived Bonilla to be a threat, Officer Jordan alleges he missed Bonilla. (J.A. K, Doc. 52, Exhibit 18, at p.43).

## SUMMARY OF ARGUMENT

The trial court erred in its use of discretion by not allowing Plaintiff leave to amend her complaint. Following an intensive review of the investigation, and discovery, including a meeting with Pennsylvania State Police to receive assistance in tracing the evidence through the investigation, Plaintiff discovered that a paragraph in the Complaint that was based on conclusions in the police investigation was inaccurate. The Complaint originally stated that Bonilla dropped his weapon simultaneously with being shot in the leg, but deposition testimony and a review of the ballistic evidence indicates facts to the contrary. During a deposition, at which defense counsel attended and for which they received transcripts, testimony indicated that the original statements in the report that Bonilla was struck in the leg simultaneously with being shot were contradicted. Plaintiff requested leave to file an amended complaint that addressed only one paragraph in the complaint and was directly supported by testimony from a deposition. Therefore, Defendants were not unduly prejudiced, as it was not new information. The trial court wrongly relied too heavily on the timing of the request to amend, and therefore erred in denial of the motion.

The trial court further erred in granting Defendants' summary judgment motions. In the trial court's Memorandum, the statement of facts is entirely based off of Defendant's joint statement of facts, except for one citation. (*See*, J.A. V,

Doc. 103.) In the legal analysis, the court considered the testimony of Ms.

Matthews, and determined it was "wholly unreliable," thereby failing to consider

the evidence in the light most favorable to the non-moving party. (*Id*. at p. 26.)

The trial court also erred in determining that the evidence was undisputed relying

on the Officer's testimony and not considering a different theory of the events than

the one presented by Defendants based on various evidence available.

The trial court erred in granting summary judgment based on the officer's

having qualified immunity, because there is evidence to indicate that the officer's

did in fact violate Bonilla's constitutional rights, and the court wrongly concluded

that the officer's believed Bonilla was armed and firing shots when they used

force, as there is evidence to the contrary and therefore is a question of fact for a

jury. The court further erred in granting summary judgment for the assault and

battery and wrongful death and survival actions based on the flawed rational used

in the analysis of the constitutional claims.

# ARGUMENT FOR APPELLANT

## I.   WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S MOTION TO REQUEST LEAVE TO AMEND COMPLAINT.

Pursuant to Federal Rules of Civil Procedure 15(a)(2), "the court should freely give leave when justice so requires."  Leave to amend should be freely given, at the court's discretion, absent any apparent reason, such as undue delay, bad faith, or undue prejudice. Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962). The court must also consider whether granting leave to amend the complaint "would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267.

Plaintiff requested to amend a single paragraph in her Complaint. (J.A. R, Doc. 87.) During drafting of the Complaint, Plaintiff and her counsel relied on the information available in the investigatory reports, as that was the only information available. (*Id*.) However, following discovery and an in-depth review of the evidence, Plaintiff determined that there was evidence to suggest the Bonilla did not drop his weapon simultaneously with being struck by a bullet in the leg, and instead, turned and faced the police officers and dropped his weapon prior to being shot. (*Id*.)  In making its determination, the trial court heavily relied on previous court rulings that stated that the filing for leave to amend following summary judgment motions should "raise an inference" that the request is being made in

order for Plaintiff to bolster her claim and avoid summary judgment. See, Cureton, 252 F.3d at 273; Fatir v. Dowdy, Civ. No. 95-CV-0677, 2002 WL 2018824, *8 (D. Sel. Sept. 4, 2002); Reyes v. Pac. Bell, 21 F.3d 1115, 1115 n.4 (9th Cir. 1994).

In this case, the court failed to take into consideration that the deposition of Ms. Matthews, who was critical to the requested leave to amend, was not conducted until February 12, 2016, and it was not until the first week of April, 2016, and Plaintiff's counsel met with Pennsylvania State Police Department members in order to receive guidance regarding interpreting the evidence log numbers and their correlation to the ballistic report. (J.A. S, Doc. 88, at p. 2.) Prior to this meeting, Plaintiff was interpreting much of the evidence based on the reports by the Pennsylvania State Police; however, during the meeting, Plaintiff's counsel was able to trace the evidence in order to see that recovered bullet jackets from Officer Roosen's gun indicate that he continued to fire after Bonilla stopped firing, which is inconsistent with his deposition. (*See*, *Id*. at Exhibits F and G.) The first motion for summary judgment was filed on March 21, 2016, prior to the date Plaintiff's counsel was able to meet with State Police and determine that the investigation reports did not accurately describe the evidence. (See, *Id*.; J.A. G, Doc. 45.) Based on the time line, there is evidence to rebut the inference that Plaintiff was filing for leave merely to bolster a summary judgment claim.

The requested amendment to the complaint was very limited in scope, and was based off of evidence and an understanding of the facts that was not acquired until shortly before and shortly after the filing of summary judgment motions. Therefore, the trial court abused its discretion in denying Plaintiff's request to amend the Complaint, as it did not cause undue prejudice and was not unduly delayed.

## II. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

Federal Rules of Civil Procedure 56(a) provides that "([t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." The evidence of the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (U.S. 1986). The court "must view the facts in the light most favorable to the non-moving party." Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3rd Cir. 2005).

The trial court addressed the motions to dismiss together, and, therefore, Plaintiff will do the same.

## A. The Court Erred in Granting Summary Judgment in Defendants favor for Plaintiff's Excessive Force Claims.

Whether or not intentional use of deadly force by a police officer is permissible under the Fourth Amendment requires an objective reasonableness inquiry. Graham v. Conner, 490 U.S. 386 (1989).  The trial court properly identified factors that a court should consider in determining whether the force was objectively reasonable, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Estate of Smith v. Marasco, 318 F.3d 497, 51 (3d. Cir. 2003). The court should also consider "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Kopec v, Tate, 361 F.3d 771, 777 (3d Cir. 2004) (citation omitted).

The trial court erred in determining that the testimony of Ms. Matthews was "wholly unreliable" and contradicted by the record and therefore no reasonable jury could believe her. (*See*, J.A. V, Doc. 103, p.26-27.) By make this determination, the trial court took the determination of credibility away from the jury, by placing a higher degree of trustworthiness on the defendant police officers. While Plaintiff acknowledges inconsistencies in Ms. Matthews statements, there

are also inconsistencies between the two officer's statements regarding if a minivan was present as described and the interpretation of the ballistics evidence as previously explained, indicates inconsistencies.

In determining if the Officer's acted reasonable in firing a deadly shot at Bonilla, the main question is whether the officer who fired the fatal shot knew or had reason to know that Bonilla was no longer armed. The trial court relied on this reasoning in denying Defendant's motions to dismiss, and again in granting summary judgment. (*See*, J.A. V, Doc. 2013, at p.30.) The trial court erred in determining that the question no longer existed at the time of summary judgment.

The trial court determined that it knew which shot was the fatal shot. (*Id*. at p. 31.) In doing so, Plaintiff believes the court was relying on Defendant's interpretation of the ballistics report and Autopsy report that the bullet recovered during Bonilla's autopsy was from the fatal shot. However, that bullet was not recovered from the wound, and was recovered from his sweatshirt, and, there is nothing in the reports indicating that it was the fatal shot. (*See*, J.A. K, Doc. 52, Exhibit A.) While it is disputed when exactly shots ceased being fired, it is established that during the time that Bonilla walked across the parking lot to the grass median, no shots were fired. (J.A. F, Doc. 44, p. 79-81).) Additionally, the autopsy report describes very drastic damage to Bonilla's body, including perforating his left lung, the aorta, the and left ventricle, as well as the tricuspid

and aortic calves being extensively lacerated. (J.A. K, Doc. 52. at Exhibit 1, p. 5.)

Under the court's assumption, the fatal shot, which caused the described damage,

would have occurred prior to defendant walking across a parking lot, falling over,

and then proceeding to lift himself up off the ground and speak. Due to the

extensive damage, and the fact that Officer Jordan admits to firing a shot at

Bonilla's center mass and no bullet was recovered from the grassy median, it

would be reasonable for a jury to determine that Officer Jordan fired a shot while

Bonilla was laying in the grass unarmed and struck Bonilla in the chest.

Additionally, Officer Roosen described Bonilla as limping, but never mentioned

that he was holding his chest or in any other way indicating that he had been shot

in the chest prior to walking across the parking lot. (*See*, J.A. F, Doc. 44, Exhibit

12, p.52-53, Exhibit 11, p.24. )

Additionally, Officer Roosen admitted that he no longer perceived Bonilla to

be a threat after he watched an item leave his hand. (*Id*., at p. 73.) However, there

is deposition testimony from Ms. Matthews that put into question the series of

events. Also, Officer Roosen allegedly perceived Bonilla was no longer a threat,

but never indicated such to Officer Jordan in order to ensure that the proper use of

force was being used. (J.A. K, Exhibit 12.)

Lastly, if Officer Jordan did not hit Bonilla when he fired on him while he

was laying in the grass, there is evidence that supports that both Officer Jordan and

Officer Roosen knew Bonilla was no longer a threat prior to ceasing fire. A thorough analysis of the ballistic reports and a diagram of the scene indicate that, if everyone was standing in the locations described by the officers, Bonilla ceased firing his weapon prior to several additional shots being fired at him. (J.A. R, Doc. 87, Exhibit F and G.) Also, it is disputed that Officer Jordan's view of Bonilla was ever blocked by a van that was described differently by Officer Jordan, Officer Roosen denied ever seeing, and Ms. Matthews claims was not where indicated by Officer Jordan. Because there is evidence to support claims that Officer Roosen or Officer Jordan fired the fatal shot while knowing or having reason to believe that Bonilla was unarmed, the trial court erred in granting summary judgment.

## B. The Trial Court Erred in Granting Summary Judgment based on Qualified Immunity.

Qualified immunity will be denied to a police officer where his conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have know." Pearson v. Cullahan, 555 U.S. 223, 129 S.Ct. 808 (2009). The question "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).

The trial court determined that, based on the same evidence relied on for the excessive force claims, that there was no constitutional violation, or, for the sake of argument, that had a constitutional violation been shown, that "no reasonable officer would believe that using deadly force against an armed assailant who is firing multiple gunshots in a crowded public place is clearly unlawful, and Officers Roosen and Jordan would be entitled to summary judgment based on qualified immunity." (J.A. V, Doc. 103, at p. 32.) However, as previously addressed, there is evidence on the record to support the claim that both officers knew or had reason to know that Bonilla was no longer armed, and that Bonilla had ceased firing even before dropping his weapon. Therefore, the claim that the officers were shooting an armed assailant who was firing his weapon does not take into consideration all evidence in the light most favorable to the non-moving party, and Defendants' motion for summary judgment based on qualified immunity should have been denied.

## C. The Trial Court Erred in Granting Defendant City of York's Motion for Summary Judgment for <u>Monell</u> claims.

A municipality can be held liable for constitutional violations when the municipality itself causes an employee to violate constitutional rights by an official custom of policy. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-94, 98 S.Ct. 2018 (1978). The trial court erred in determining that Defendant York City was not

liable because there was no underlying constitutional violation. As previously addressed, there is evidence for a jury to determine that a constitutional violation did occur by the use of deadly force when Bonilla was no longer armed and was in fact surrendering to police.

Since there was an underlying constitutional violation, Plaintiff must show that a municipal policy or custom lead to Plaintiff's injuries. Briston v. Cnty. Of Alleghany, 2011 U.S. Dist. LEXIS 13663 (2011).  In this case, Officer Roosen has received a performance evaluation in August of 2011, a little over a year before the incident, in which it was indicated that Officer Roosen was "below shift average in every measurable category." (*See*, J.A. F, Doc. 44, Exhibit 21.) However, Officer Roosen received no additional training or education, which indicates a policy of allowing officers who are not performing adequately to continue to patrol and engage in altercations despite supervisors indicating problems. Additionally, the actions taken during this incident indicate a lack of proper training during situations involving armed suspects.

Therefore, there is sufficient evidence in the record to support the denial of summary judgment.

## D. The Trial Court Erred in Granting Summary Judgment for the Assault and Battery, Wrongful Death and Survival Actions, and Punitive Damages Claims.

The trial court determined that the assault and battery claims should be dismissed based on the same rational as the previous claims, determining that the actions of the officers consisted of reasonable force, and, therefore, not assault and battery. As previously described, there is evidence in the record that, interpreted in the light most favorable to Plaintiff, would allow a reasonable jury to find that Officer Jordan and Officer Roosen fired at Bonilla after he ceased firing and dropped his weapon, as well as when he was laying in the grass, lifting up off the ground only after being instructed to show his hands which were underneath his body. Therefore, for the same reasons as previously addressed, the trial court erred in granting summary judgment for these claims.

The trial court then determined that since the assault and battery claims fail, then the wronful death and survival actions fail as well. (J.A. V, p. 103.) While Plaintiff does not dispute that wrongful death and survival actions are not substantive causes of action, Plaintiff has presented evidence to support the assault and battery claims, and, therefore, the wrongful death and survival action claims should survive as well.

Additionally, the trial court used the same determination that Officer's Jordan and Roosen acted reasonably to grant summary judgment for claims of punitive damages against the officers. In order for Plaintiff to received punitive damages against police officers, the officer must be acting with "reckless or callous disregard of, or indifference to, the rights or safety of others." <u>Savares v. Agriss</u>, 883 F.2d 1194. If, as evidence indicates, an officer fired on a suspect after witnessing the suspect drop his firearm, approach as if to surrender, and then lay injured on the ground, it would be reasonable for a jury to determine that the officer was acting with complete indifference to that person's constitutional rights. Therefore, based on the previously articulated argument, the trial court erred in granting Defendants' motion for summary judgment.

## **<u>CONCLUSION</u>**

For the forgoing reasons, Appellant requests this Honorable Court to vacate the trial court's Order to the extent it grants Defendants' motions for summary judgment and denies Plaintiff's motion for leave to file an amended complaint.

Respectfully submitted,


/S/ Farley G Holt
Farley G Holt, Esquire
Supreme Court Id No. 59920
Law Office of Farley G Holt
34 North Queen Street
York, Pa 17403
Phone: (717) 846-0550

Attorney for Appellant

CERTIFICATE OF COMPLIANCE

I hereby certify that I am filing the attached brief for Appellant, and:

1. This brief complied with the length limitations of Fed. R. App. P. 32(a)(7) and L.A.R. 112.9 (b), because this brief does not exceed 30 pages in length.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.32(a)(6), because it is in proportionally-spaces typeface that is at least 14 points.

3. The text of the electronically filed brief, in pdf format, is identical to the text of the paper copies of the brief. The electronic brief has been scanned using Norton AntiVirus Software.


/S/ Farley G Holt _____
Farley G Holt, Esquire
Supreme Court Id No. 59920
Law Office Of Farley G Holt
34 North Queen Street
York, Pa 17403
Phone: (717) 846-0550

Attorney for Appellant

<u>PROOF OF SERVICE</u>

     I hereby certify that the foregoing Appellant's Appeal Brief will be served electronically by a Notice of Docket Entry upon the listed persons, who are users of the online filing system, in accordance with L.A.R. 113.4:

Kimberly A. Boyer-Cohen, Esq.

Sheryl L. Brown, Esq.

Date: _____10/18/16_____     /S/ Farley G Holt_____
                                       Farley G Holt, Esquire
                                       Supreme Court Id No. 59920
                                       Law Office Of Farley G Holt
                                       34 North Queen Street
                                       York, Pa 17403
                                       Phone: (717) 846-0550

                                       Attorney for Appellant